## Liss *v.* Medary Homes, Appellant.

140

Argued November 23, 1956. Before STERN, C. J., JONES, BELL, MUSMANNO and ARNOLD, JJ.

*David Freeman,* for appellants.

*Herman Blumenthal,* for appellees.

OPINION BY MR. JUSTICE BELL, March 18, 1957:

Plaintiffs brought an action to quiet title to a piece of ground situate at the northwest corner of 19th

Street and Godfrey Avenue, in the City of Philadelphia. Defendants, in their answer admitted all of the facts except the averments of fraud which they denied. The lower Court, without passing upon the question of fraud, sustained plaintiffs' motion for judgment on the pleadings.

On June 2, 1952, plaintiffs and their wives conveyed the subject premises to the defendant, Medary Homes, Inc. (hereinafter referred to as Medary), for a total consideration of $26,489.10, of which $3,239.10 was in cash and the balance of $23,250.00 was a purchase money mortgage. This purchase money mortgage, which was duly recorded on June 11, 1952 as a first lien, contained a provision making it subordinate to the lien of "any new construction mortgages" to be created on the premises.

In *August* of *1953*[*] a judgment was entered by one Harry Moses against Medary in the sum of $1,757.73. This judgment constituted a second lien on the property.

Prior to October 29, 1953, mortgagor paid to the mortgagees on account of the purchase money mortgage the sum of $10,500., which it derived from the proceeds of sale of part of the mortgaged premises on which it had erected seven duplex dwellings. That ground was released from the lien of the purchase money mortgage. The mortgagor then defaulted in the payment of interest, and on October 29, 1953 plaintiffs caused judgment to be entered upon the bond made by Medary accompanying the (purchase money) mortgage in the sum of $11,472.88, representing the balance of principal, plus interest, costs and fees.

On December 2, 1953, while the mortgage was in default, plaintiffs accepted the sum of $2,000. to cure

---

[*] The exact date is not disclosed.

the default and agreed to extend the time for the payment of the balance of principal of the mortgage to December 2, 1955. A written extension agreement dated January 27, 1954, was entered into by the mortgagor and mortgagees which provided, inter alia, that the purchase money mortgage should be subordinated in lien to the lien of any new construction mortgages created by the mortgagor.

Defendants thereafter, to wit, on June 2, 1955, defaulted in the payment of interest on the purchase money mortgage as extended. *On June 10, 1955,* another mortgage *dated February 16, 1954,* in the sum of $8,000., *was recorded* as a lien on the balance of the premises covered by the purchase money mortgage. This mortgage was made by Medary to Sally Miller, the principal stockholder of Medary. When it was recorded, Sally Miller was the secretary of Medary and her husband, Jack Miller, was the president. The mortgage contained the following clause:

". . . and the Mortgagee shall use and apply the aforesaid sum of $8,000.00 for certain construction work and improvements contemplated to be made at the time of execution hereof for the purpose of erecting and constructing duplex dwellings and/or multiple dwelling units in and upon the premises mortgaged herein; it being understood that *this mortgage is a construction mortgage** . . .*"

The defendants averred that the $8,000. therein recited was advanced by Sally Miller to Medary for the use in the construction work on said premises and was so used by Medary. Under the pleadings, we must assume that the Miller mortgage was a bona fide construction mortgage and that there was no fraud in the

---

* Italics throughout, ours.

transaction. Cf. *Housing Mortgage Corp. v. Allied Construction, Inc.,* 374 Pa. 312, 317, 97 A. 2d 802.

On August 1, 1955, plaintiffs caused a writ of fi. fa. to be issued on the judgment entered upon the bond accompanying the purchase money mortgage, and the premises were offered for sale by the Sheriff of Philadelphia County on September 19, 1955. At this sale the premises were sold to the attorney on the writ for the sum of $750.00 and title to the premises was taken in the names of plaintiffs, Louis Liss and Herman Blumenthal. At the time of the sale, counsel for defendant, Sally Miller, gave notice that the mortgage to Sally Miller would not be discharged by the sale.

The issue in this suit is whether the lien of the mortgage to Sally Miller was discharged by the Sheriff's Sale. The Court below decided that it was.

In *Silverman v. Keal,* 135 Pa. Superior Ct. 568, 7 A. 2d 57, the Court said (page 570) : "As a general rule a sheriff's sale of real estate discharges all liens [prior as well as subsequent liens] on the property sold unless the sale is expressly made subject to a prior lien or liens (Girard Life Ins. etc. Co. v. Farmers' & Mechanics' National Bank, 57 Pa. 388, 394; Olyphant Boro. v. Egreski, 29 Superior Ct. 116, 119; Com. for use Gurney v. Alexander, supra), *or unless it is otherwise provided by statute, as in the case of certain mortgages* (Act, April 30, 1929, P. L. 874, 21 PS §651, a re-enactment of many of the provisions of the original act of April 6, 1830, P. L. 293), and in the case of tax and municipal liens (Act, May 16, 1923, P. L. 207, 53 PS §2051)." See also: *Commonwealth v. Udziewicz,* 353 Pa. 543, 46 A. 2d 231.

The Act of April 30, 1929, P. L. 874, 21 PS 651, provides in material part: "When the lien of a mortgage upon real estate is or shall be prior to all other liens upon the same property, except other mortgages, . . .

the lien of such mortgage, shall not be destroyed or in anywise affected by any judicial sale, . . . ."

The lower Court, in an able opinion by Judge SPORKIN, held that even if the mortgage from Medary to Sally Miller was a construction mortgage as that term was used in the purchase money mortgage, the lien of Sally Miller's mortgage was divested and destroyed by the sale; and the plaintiffs had a clear title. We agree with the lower Court.

The Sally Miller mortgage, recorded June 10, 1955, was not prior to all other liens—Moses' judgment preceded on the record the Miller mortgage, and the Sheriff's sale (on the execution of the judgment entered on the defendant's bond) was not made subject to the lien of the judgment or of any mortgage. The owner of the Moses judgment did not agree to the extension of the purchase money mortgage or that the Miller mortgage could be a prior lien. Even if the purchase money mortgage, which was recorded June 11, 1952, was subordinated to the Miller mortgage, which was recorded June 10, 1955, on the theory that the latter was a construction mortgage, the Miller mortgage was not recorded prior to Moses's intervening judgment of August, 1953, and therefore it is not "prior to all other liens upon the same property" within the meaning of the statute: *Warren Pearl Works v. Rappaport,* 303 Pa. 235, 154 A. 587; *Colonial Trust Co. v. Lincoln Drive Apartments Corp.,* 299 Pa. 117, 123, 149 A. 165; *Pennsylvania Co. v. Halpern,* 273 Pa. 451, 117 A. 197.

The fact that Sally Miller, at the time of the Sheriff's sale, gave notice that the mortgage made by Medary to her would not be discharged by the sale, cannot create a title or lien in her which she did not possess and consequently can have no legal effect upon the rights of Moses, the intervening judgment creditor, or of the purchasers at this Sheriff's sale. Titles to real

estate are protected by the public records and cannot be divested or defeated by matters dehors the record. See *Colonial Trust Co. v. Lincoln Drive Apartments Corp.,* 299 Pa., supra; *Warren Pearl Works v. Rappaport,* 303 Pa., supra; *Reisinger v. Garrett S. C. Co.,* 262 Pa. 530, 106 A. 78; *Reading v. Hopson,* 90 Pa. 494; *Meigs v. Bunting,* 141 Pa. 233, 21 A. 588; *Silverman v. Keal,* 135 Pa. Superior Ct., supra, page 568.

In *Colonial Trust Co. v. Lincoln Drive Apartments Corp.,* 299 Pa., supra, the Court said (page 123): ". . . it is fundamental in this State that the rights of all parties at a sheriff's sale of real estate depend on the record at the time of the sale: Pa. Co. for Ins. on L. & G. A. v. Halpern, 273 Pa. 451, 455; Reisinger v. Garrett S. C. Co., supra. Speaking for the court, in Hilliard v. Tustin, 172 Pa. 354, Mr. Justice FELL says: 'The importance of a fixed rule by which bidders at a sheriff's sale may be guided and the rights of purchasers determined has been uniformly recognized and upheld in our cases. The purchaser was not bound to look beyond the record, and was not affected by, and could not affect others by, anything beyond it.' And see Horner v. Scott, 242 Pa. 432; Coyne et al. v. Souther, 61 Pa. 455. The rule is held so firmly that an unsatisfied judgment, although paid, operates to discharge the lien of what would otherwise be a first mortgage. In Saunders v. Gould, 134 Pa. 445, Mr. Justice CLARK, speaking for the court, said: 'A purchaser is not bound to look beyond the record. The payment of a prior lien, not satisfied of record, will not protect a subsequent mortgage from being discharged by the sale: Magaw v. Garrett, 25 Pa. 319; Goepp v. Gartiser, 35 Pa. 133.'"

Judgment affirmed.